# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| ELENA BOTTS, on behalf of herself and all others similarly situated,<br>2130 Glencourse Ln.<br>Reston, VA 20191<br><br>     Plaintiff,<br><br>  v.<br><br>THE JOHNS HOPKINS UNIVERSITY,<br>3400 N. Charles St.<br>Baltimore, MD 21218<br><br>     Defendant. | Civil Action No. 1:20-cv-1335<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Elena Botts ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Johns Hopkins University ("Johns Hopkins" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all people who paid full tuition and fees for in-person undergraduate or graduate programs for the Spring 2020 academic semester at Johns Hopkins, and who have been forced to bear the full financial responsibility for Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, without the benefit of the education for which they paid, and/or the services or which their fees were paid.

2. Though all individuals and institutions feel the impact of the COVID-19 crisis, Defendant has not apportioned the burden in an equitable manner or consistent with its educational obligations.  Though it has retained all tuition, fees, and related payments for the Spring 2020 semester, it has offered only online classes since March 10, 2020.

3.      As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative class contracted and paid for but has nonetheless retained full tuition payments.

4.      Defendant itself typically charges far less for online education than in person, in recognition of the fact that online classes cannot replicate the full academic opportunities of in-person instruction.  Online learning cannot recreate, for example, the access to facilities, materials, and faculty, or the opportunity for collaborative learning and in-person dialogue, feedback, and critique. Such remote learning options simply cannot replace the experiential richness of academic life on a college campus in a major U.S. city and thus do not have the same value as the in-person education for which Plaintiff and putative class members paid.

5.      Defendant is not entitled, by either contract or equitable principles, to pass the entire cost of COVID-19-related closures on to students and their families.  Rather, Plaintiff and the putative class are entitled to a partial refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided.

6.      Through this lawsuit Plaintiff seeks, for herself and Class members, Defendant's disgorgement of the prorated portion of tuition and fees, proportionate to the diminished value of online classes and amount of time that remained in the Spring Semester 2020 when Defendant moved classes online and ceased providing campus services. Plaintiff seeks a return of these amounts on behalf of herself and the Class as defined below. Plaintiff also seeks compensation for paying for a traditional, on-campus experience but

4

only receiving online classes which the Defendant attempts to pass off as equivalent or similar in kind.

## PARTIES

7.      Plaintiff Elena Botts is a citizen of Virginia who currently resides in Maine. Ms. Botts is a graduate student in the School of Advanced International Studies at Johns Hopkins University ("SAIS").

8.      Plaintiff paid approximately $26,600 in tuition and fees to Defendant for Spring Semester 2020.  Plaintiff requested a partial refund of her tuition after her in-person classes were cancelled but to date has received no such refund.

9.      Defendant Johns Hopkins University is a private research university founded in Baltimore, Maryland in 1876.  The university has approximately 23,000 students attending the school's graduate and undergraduate programs and an endowment estimated at $6.28 billion dollars.

10.     Upon information and belief, Defendants are eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based upon enrollment in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Defendant conducts substantial business in this district.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district.

## FACTUAL ALLEGATIONS

### Closure of Campus and Suspension of In Person Education

14.     Plaintiff and Class members are individuals who paid the cost of tuition and other mandatory fees for undergraduate or graduate programs for the Spring 2020 Semester at Johns Hopkins.

15.     At the time Plaintiff and putative class members paid their tuition, they entered into a contract with Defendant that provided that Plaintiff and members of the Class would pay tuition and fees and the University would provide live, in-person instruction and access to physical resources such as libraries and laboratories.

16.     Spring Semester 2020 classes at Johns Hopkins began on or about January 15, 2020.

The Spring Semester was scheduled to end on May 12, 2020.

17.     Plaintiff and Class members paid the cost of tuition for the Spring Semester 2020. They also paid other mandatory fees for the 2019/2020 academic year, including Student Service Fee of $900, Matriculation Fee of $500, and a UPass/Metro Fee of $200.

18.     Approximate tuition costs at Johns Hopkins for the Spring Semester 2020 are as follows:[1]

---

[1] The tuition and fees described are exemplary only.  Total damage amounts, which may include other fees that are not listed herein but that were not refunded, will be adduced during the course

- Undergraduate: $ 27,675

- Master of Business Administration Program: $30,500

- Other Graduate Programs: $26,150 – 34,860 (depending on program)

19.     On March 11, 2020, Johns Hopkins, through an email to its students, faculty, and staff, announced that because of the global COVID-19 pandemic, all in-person classes for the Spring 2020 semester would be suspended and replaced with online classes by March 23, 2020, and that all students would be required to move out of on-campus housing by March 15, 2020.

20.     This announcement, though necessitated by circumstances, effectively breached or terminated the contract Johns Hopkins had with each and every student and tuition provider, who had paid for the opportunity to participate in academic life on Johns Hopkins's campus.

21.     Johns Hopkins has not held any in-person class since March 10, 2020. The closure of its campuses has been extended through the end of Spring Semester 2020 and through the Summer 2020 semester. Classes that have continued have only been offered in an online format, with no in-person instruction. Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences) have only had access to online education options.

22.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative class contracted and paid for.

23.     Defendant, however, maintains not only that its contract with students remains in full effect but that it is continuing to uphold its side of the agreement.  Defendant has therefore

---

of litigation.

4

refused to refund tuition and related expenses, purportedly based on its provision of online classes.

24.     In so doing, Defendant is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as fully participation in the university's academic life.

25.     Plaintiff and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

**Inferiority of Online Educational Experience**

26.     At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses."  The study found that:

- Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

- Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking on online version of the same course;

- Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

- Taking an online course reduced the probability of the student remaining enrolled a in the university a year later by over ten percentage points.

Eric P. Bettinger *et al,, Virtual Classrooms: How Online College Courses Affect Student Success,* AMERICAN ECONOMIC REVIEW, Vol. 107 No, 9, p. 2857.

27.     Defendant itself touts the value of its campus life, proclaiming, "Life at Johns Hopkins is about more than earning a degree. Here, you'll **be a part of enduring university traditions** and have **new experiences that you'll remember for a lifetime**." Johns Hopkins University, "Campus Life," at https://www.jhu.edu/life/ (May 21, 2020) (emphasis in original).

28.     Defendant also touts its research capabilities, now significantly curtailed by lack of access to laboratories, libraries, and in-person access to faculty:

> Researchers at our nine academic divisions and at the university's Applied Physics Laboratory have made us the nation's leader in federal research and development funding each year since 1979. Those same researchers mentor our inquisitive students—about two-thirds of our undergrads engage in some form of research during their time here.
>
> Research isn't just something we do—it's who we are. Every day, our faculty and students work side by side in a tireless pursuit of discovery, continuing our founding mission to bring knowledge to the world.

Johns Hopkins University, "Research & Faculty," at https://www.jhu.edu/research/ (May 21, 2020).

29.     Likewise, Defendant describes its various libraries, now largely inaccessible, as "[a] focal point of activity (both studious and social)," "[h]ome to our incredibly helpful librarians (the original search engines), the stacks, and our impressive collection of rare books and manuscripts," and "'the cathedral of books.'"  Johns Hopkins University, "Libraries," at https://www.jhu.edu/research/libraries/ (May 21, 2020).

30.     Defendant claims that "Living on campus is an indispensable piece of the Hopkins undergraduate experience."  Johns Hopkins University, "Housing & Dining," https://www.jhu.edu/life/housing-dining/ (May 21, 2020).

31.     For Plaintiff's graduate program, Defendant notes the significance of "Experiential Learning," claiming that "[t]hrough study treks, practicum projects, staff rides,

4

career treks, and internships, you will gain practical, hands-on experience."  Johns Hopkins University School of Advanced International Studies, "Experiential Learning," at https://sais.jhu.edu/student-experience/experiential-learning (May 27, 2020).

32.     Defendant's website for Plaintiff's graduate program quotes one student on the importance of in-person interactions:

> Johns Hopkins SAIS can be best described by our café.  When you first walk in you may overhear a group talking about their research in Vietnam, a few more steps and you will meet a classmate returning from Nigeria, and eventually you will get to the policy memo you came to the cate to work on.  My degree is not just about coursework, it is also about building my global network.

Johns Hopkins University School of Advanced International Studies, "Student Experience," at https://sais.jhu.edu/student-experience (May 26, 2020).

33.     Defendant further touts the benefits of in-person extracurricular activities for Plaintiff's graduate program as an essential component of a John Hopkins Education:  "Through extracurricular activities such as alumni networking event, informal dinners, happy hours and special programs, you will form lasting professional and social networks." https://sais.jhu.edu/employers/student-activities (May 26, 2020).

34.     Likewise, students at SAIS can no longer meaningfully participate in student clubs, described by Defendant as, "[o]ne of the most exciting aspects of graduate school" for the opportunity to "expand[] your network by meeting classmates with varied interests, career aspirations, and cultures."  https://sais.jhu.edu/employers/student-activities (May 21, 2020).

35.     Defendant also trumpets the value of its on-campus library: "Mason Library provides services, collections, and technologies that support the Johns Hopkins SAIS community. From one-on-one consultations with librarians to spaces for academic collaboration, the library

is a hub of activity for students."  Johns Hopkins University School of Advanced International

Studies, "Our Libraries," at https://sais.jhu.edu/faculty-research/our-libraries (May 27, 2020).

36.     The online learning options Defendant currently offers, though consistent with

safety measures, thus simply cannot provide the academic experiences Defendant itself touts as

its signatures.

## Lower Tuition for Online Education

37.     For all of the reasons Johns Hopkins highlights, in-person education is worth more

than online education.

38.     Accordingly, the tuition and fees for in-person instruction at Johns Hopkins are

higher than tuition and fees for its own online classes and for other online institutions because

such costs cover not just the academic instruction, but encompass an entirely different experience

which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer
  labs, and study rooms;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

39.     The fact that Johns Hopkins students paid a higher price for an in-person education

than they would have paid for an online education is illustrated clearly by the vast price difference

in Johns Hopkins's in-person, on-campus programs versus Johns Hopkins's own online learning

4

program.

40.     Defendant's MBA program, for example, charges $62,500 for tuition for one year

of its two year in person program, but charges only $41,175 for the equivalent credits for its

online program.   Johns Hopkins University Carey Business School, "Tuition and fees," at

https://carey.jhu.edu/programs/admissions/how-to-apply/tuition-fees (May 27, 2020).

## Damages

41.     Through this lawsuit Plaintiff seeks, for herself and Class members, Defendant's

disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time

that remained in the Spring Semester 2020 when classes moved online and campus services

ceased being provided, accounting for the diminished value of online learning. Plaintiff seeks

return of these amounts on behalf of herself and the Class as defined below.

42.     Plaintiff also seeks damages relating to Defendant's passing off an online,

"virtual" college experience as similar in kind to full immersion in the academic life of a

college campus.

## CLASS ALLEGATIONS

43.     Plaintiff seeks to represent a class defined as all people who paid Johns Hopkins

Spring Semester 2020 tuition and/or fees for in-person educational services that Johns Hopkins

did not provide, and whose tuition and fees have not been refunded (the "Class"). Specifically

excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents,

children, corporations, trusts, representatives, employees, principals, servants, partners, joint

ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons

or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the

judge assigned to this action, and any member of the judge's immediate family.

4

44.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

45.     **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

46.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    (a)     whether Defendant accepted money from Class members in exchange for the promise to provide services;

    (b)     whether Defendant has provided the services for which Class members contracted;

    (c)     whether Defendant violated the Maryland Consumer Protection Act ("MCPA");

    (d)     whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

    (d)     whether Defendant is liable to Plaintiff and the Class for unjust enrichment.

47.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of

the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

48.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic

to those of the Class.

49.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

50.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would

4

establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I

### Breach of Contract

51.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

53.     Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Defendant.

54.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide in person education services, including in person instruction and access to on campus resources, for the full duration of Spring Semester 2020.

55.     Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.

56.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above but has retained monies paid by Plaintiff and the Class for their Spring Semester 2020 tuition and fees.

57.     Plaintiff and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

58.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.

## COUNT II
### Unjust Enrichment

59.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

60.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant, and in the alternative to Count I.

61.     Plaintiff and members of the Class conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises. Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.

62.     Defendant voluntarily accepted and retained this benefit by accepting payment.

63.     Defendant has retained this benefit, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

64.     The online education services Defendant substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but Defendant has nonetheless retained full payment.

65.     It would be unjust and inequitable for Defendant to retain benefits in excess of the

4

services it provided, and Defendant should be required to disgorge any tuition and fees that exceed the value of online education from March 16, 2020 through May 12, 2020.

## COUNT III
### Maryland Consumer Protection Act ("MCPA")
### Md. Code Ann., Comm. Law §§ 13-101 *et seq.*

66.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiff and class members purchased education services from Defendant and are "consumers" as defined by Md. Code Ann., Comm. Law § 13-101(c).

68.     Education services are services used primarily for personal, family, or household purposes and are therefore "consumer services" as defined by Md. Code Ann., Comm. Law § 13-101(d).

69.     Defendant violated Md. Code Ann., Comm. Law §§ 13-301(1), (2)(i), and (2)(iv) by falsely representing to Plaintiff and class members that online education has the same value as in-person education.

70.     Defendant intended that Plaintiff and class members rely on its misrepresentation as to the quality of its online classes as a substitute for in person education, in violation of Md. Code Ann., Comm. Law  § 13-301(9)(i).

71.     Defendant's representations as to the quality of their online classes as compared to in person education had the tendency to mislead.

72.     Plaintiffs and class members are, accordingly, entitled to actual damages, costs, and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

> (a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and

Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit.

4

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: May 29, 2020

Respectfully submitted,

*/s/ Courtney L. Weiner*
Courtney L. Weiner (#19463)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com

FRANCIS MAILMAN SOUMILAS, P.C.
James A. Francis (*pro hac vice Forthcoming*)
John Soumilas (*pro hac vice forthcoming*)
Edward H. Skipton (*pro hac vice forthcoming*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Telephone: (215) 735-8600
Facsimile: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: eskipton@consumerlawfirm.com

Kevin Mallon (*pro hac vice forthcoming*)
Mallon Consumer Law Group, PLLC
One Liberty Plaza, Suite 2301
New York, NY 10006
(646) 759-3663
E-mail:  consumer.esq@outlook.com